Filed 11/4/21  P. v. Curiel CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　Plaintiff and Respondent,<br><br>　　v.<br><br>FREDDY ALFREDO CURIEL,<br><br>　Defendant and Appellant. | G058604<br><br>(Super. Ct. No. 02CF2160)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Julian W. Bailey, Judge.  Reversed and remanded.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Michael Pulos and Seth M. Freidman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Freddy Alfredo Curiel of first degree murder, with a true finding on the special circumstance that the murder was to further the activities of a criminal street gang within the meaning of Penal Code section 190.2, subdivision (a)(22).[1] Curiel sought resentencing pursuant to Senate Bill No. 1437 (S.B. 1437). The trial court denied his petition for resentencing in light of the jury's true finding on the special circumstance. It determined Curiel was ineligible for resentencing under S.B. 1437 as a matter of law because "it is apparent that [Curiel's] conviction and sentence rest[ed] upon the jury's finding that although he was not the actual shooter, he acted with the *intent to kill*. This finding was part of the 'True' finding of the special circumstance pursuant to [section] 190.2[, subdivision](a)(22); intentional killing for the benefit of a criminal street gang). The Court of Appeal specifically found that the evidence was sufficient to support that finding."

Curiel asserts this was error, and we agree. The jury's findings did not establish he was ineligible for resentencing as a matter of law. We therefore reverse the trial court's postjudgment order and remand the matter for further proceedings consistent with this opinion.

FACTS

I. *Underlying Crime*

A detailed recitation of the facts is set forth in the prior opinion in this case. (*People v. Curiel* (Feb. 21, 2008, G037359) [nonpub. opn.] (*Curiel I*).) In sum, one summer morning in 2002, Cesar Tejada, Raul Ramirez, Lupe Olivares, Griselda Alfaro, Jeffrey [last name unknown], and another man were in front of Tejeda's apartment drinking and socializing. Two men walked by, later identified as Curiel and Abraham Hernandez, and stared at the group angrily before going into a convenience store.

---

[1]     All further statutory references are to the Penal Code.

Ramirez went into the apartment to use the restroom, and when he came back, Curiel and Hernandez had returned, and Curiel was arguing with Tejada. One of the men asked Tejada, "'Where are you from?'" Tejada replied, "'I am from nowhere[.]'" Ramirez asked Curiel and Hernandez to leave and one of them replied, "'Shut the fuck up,'" and it was not his business. Lupe Olivares argued with Curiel, and Curiel got into a shoving match with Tejada and Ramirez. Curiel said it was his neighborhood, and yelled, "'OTH.'"

Hernandez pulled out a gun, pointed it at Jeffery, and chased him away. Hernandez returned, argued with Tejada, and shot him in the chest at close range. Hernandez and Curiel fled the scene.

Police interviewed Olivares and showed her a security video from the convenience store. She identified Curiel as the non-shooter. Police arrested Curiel at his home later that day. In a recorded interview, Curiel said he had been at a party until midnight, went to his ex-girlfriend's house, and then went home. Confronted with the security video, he denied any knowledge of the shooting.

At trial, Olivares testified she was drunk and high at the time of the shooting, and did not remember the incident. She denied seeing Hernandez shoot Tejada or identifying Curiel to the police. An officer who interviewed Olivares after the shooting testified she did not appear to be drunk or high. On cross-examination, Olivares said she did not see who shot Tejada, but that it was Hernandez who started the confrontation, and Curiel told Hernandez to "'chill out.'"

The parties stipulated Curiel was an active member of the "On the Habit" or "OTH" gang. A gang expert testified the gang's territory included the area where the shooting occurred. The expert testified over objection that, "'if there is a gun within a group, that it is expected that everybody knows if there is a gun and who has it.'" He

3

opined the shooting was done for the benefit of and to further promote the criminal conduct of the street gang.

Curiel testified and admitted being with Hernandez when the shooting happened but denied knowing Hernandez had a gun. He recalled harsh words were exchanged between Hernandez and Ramirez, Olivares, and Tejeda. Curiel testified he told Hernandez to "'chill out.'" He admitted being a gang member, and said he lied to the police on the day of the shooting because he did not want to jeopardize himself or his family.

II. *Verdict, Sentencing, and Petition for Resentencing*

As pertinent here, the trial court instructed the jury on both aiding and abetting and the natural and probable consequences theories of murder. It also issued an instruction as to whether the murder was to further the activities of a criminal street gang within the meaning of section 190.2, subdivision (a)(22).

The jury found Curiel guilty of Tejeda's murder (§ 187, subd. (a)), with a true finding on the gang special circumstance (§ 190.2, subd. (a)(22)). It further found Curiel vicariously discharged a firearm within the meaning of section 12022.53, subdivisions (d) and (e). The jury also convicted Curiel of street terrorism in violation of section 186.22, subdivision (a). The court declared a mistrial on a second murder count and dismissed the charge. It sentenced Curiel to a term of life without the possibility of parole plus 25 years to life.

In April 2019, Curiel filed a petition for resentencing pursuant to section 1170.95. The court appointed counsel. After briefing, but without issuing an order to show cause and holding an evidentiary hearing, the court denied Curiel's petition.

## DISCUSSION

### I. *S.B. 1437 and Section 1170.95*

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.] In addition to substantively amending sections 188 and 189 . . . Senate Bill 1437 added section 1170.95, which provides a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Section 1170.95, subdivision (a), provides, in relevant part, "A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts. . . ." Under section 1170.95, if the petitioner makes a prima facie showing, the court must issue an order to show cause (OSC) and, absent a waiver and stipulation by the parties, hold a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner. (§ 1170.95, subds. (c), (d)(1).) A prima facie showing under section 1170.95 requires the following: (1) an accusatory pleading was filed against the petitioner allowing the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he or she was convicted of first or second degree murder following a trial, or accepted a plea offer to first or second degree murder in lieu of trial, at which he or she could have been so convicted; and (3) that he or she could not be convicted of murder due to the amendments to sections 188 and 189. (§ 1170.95, subd. (a)(1)-(3).)

5

The "authority to make determinations without conducting an evidentiary hearing pursuant to section 1170.95, [subdivision] (d) is limited to readily ascertainable facts from the record (such as the crime of conviction), rather than factfinding involving the weighing of evidence or the exercise of discretion (such as determining whether the petitioner showed reckless indifference to human life in the commission of the crime)." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980.) "If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision] (a), then the trial court should issue an order to show cause. [Citation.]" (*Id.* at pp. 980-981.) An order summarily denying a section 1170.95 petition without issuing an OSC is a question of law subject to de novo review. (*Id.* at p. 981.)

II. *Analysis*

Curiel argues the trial court improperly denied his petition after he made a prima facie showing under section 1170.95. We agree.

Curiel alleged in his petition, and our record reflects, one of the theories the prosecution relied on to convict him of first degree murder was the natural and probable consequences theory. Notwithstanding this showing, however, the trial court determined Curiel to be ineligible based upon the jury's true finding on the special circumstance that the murder was to further the activities of a criminal street gang within the meaning of section 190.2, subdivision (a)(22). The Attorney General argues the special circumstance finding established Curiel acted with intent to kill, rendering him ineligible for resentencing under section 1170.95 as a matter of law. We disagree with the Attorney General.

We note a defendant convicted of murder for directly aiding and abetting that offense is ineligible for resentencing under section 1170.95. Relief is precluded in that situation because liability stems from the defendant's own mental state; it is not

6

dependent on imputed malice under the felony murder rule or the natural and probable consequences doctrine. (See *People v. Chiu* (2014) 59 Cal.4th 155, 167 [a direct aider and abettor "acts with the mens rea required for first degree murder"]; *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [a direct aider and abettor must necessarily "know and share the murderous intent of the actual perpetrator"].)

However, to convict a defendant for first degree murder under the theory of direct aiding and abetting, the prosecution must prove more than just murderous intent. In addition to proving the defendant harbored the intent to kill, the prosecution must also show the defendant actually "aided or encouraged the commission of the murder[.]" (*Chiu, supra*, 59 Cal.4th at p. 167; see generally CALCRIM No. 401.)

In this case, the jury's true finding on the special circumstance allegation did not prove this crucial additional requirement. Rather, it only satisfied the intent requirement for aiding and abetting a murder. The jury's finding shed no light on whether Curiel actually encouraged or assisted the perpetrator in carrying out the murder. Thus, the jury's finding on the special circumstance does not prove, without more, he was convicted under the theory of direct aiding and abetting. While the jury established Curiel had the mindset of a murderer, they did not prove he committed the necessary acts to subject him to murder liability under that theory of culpability. (See *People v. Duchine* (2021) 60 Cal.App.5th 798, 815 [in order to deny resentencing petition at prima facie stage of proceedings, record of conviction must conclusively establish defendant both "engaged in the requisite acts" *and* "had the requisite intent" to be guilty of murder under S.B. No. 1437] (*Duchine*).) The jury's findings did not prove as a matter of law Curiel was convicted under the theory of direct aiding and abetting. Because the jury could have convicted under the now-defunct natural and probable consequences theory of first degree murder, it was error for the trial court to deny his petition for resentencing at this preliminary stage.

7

Indeed, the Attorney General concedes this very issue by stating: "Since [Curiel] was not the shooter, and since he was not charged with felony murder . . . , there were two avenues of murder liability. Either [Curiel] directly aided and abetted Hernandez's murder of Tejada or [Curiel] aided and abetted Hernandez in the commission of another crime, the natural and probable consequences of which were the murder of Tejada. After being instructed on both these theories, the jury convicted Curiel of murder." The Attorney General also admits, "True, as [Curiel] notes, we cannot know for sure if the jury convicted him based on the natural-and-probable-consequences doctrine or as a direct aider and abettor."

This is not to say Curiel is necessarily entitled to relief under section 1170.95. We agree with our colleagues in the First District, Division 2, that "the time for weighing and balancing and making findings on the ultimate issues arises at the evidentiary hearing stage rather than the prima facie stage, at least where the record is not dispositive on the factual issues." (*Duchine*, *supra*, 60 Cal.App.5th at p. 815.) The trial court should have issued an order to show cause and, absent a waiver and stipulation by the parties, ordered a hearing to allow the prosecution to prove beyond a reasonable doubt that, notwithstanding its reliance on the now-defunct theory of natural and probable consequences, Curiel is ineligible for resentencing because he directly aided and abetted the murder. (§ 1170.95, subds. (a)(3), (d)(3); see, e.g., *People v. Duke* (2020) 55 Cal.App.5th at 113, 122-124 [defendant's petition for resentencing properly denied where evidence established he directly aided and abetted the murder].) Absent such proof, the trial court must grant Curiel's petition and resentence him in accordance with section 1170.95.

## DISPOSITION

The postjudgment order denying Curiel's section 1170.95 petition is reversed, and the matter remanded with directions to issue an order to show cause and to proceed consistently with section 1170.95, subdivision (d).

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

MARKS, J.*

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9